AYRES, Judge.
This is an action brought under the provisions of the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., wherein plaintiff seeks compensation payments of his employer’s insurer at the rate of $30 per week for' the period of his disability, not however beyond 400 weeks, together with medical expenses, penalties and attorneys’ fees, as for total and permanent disability alleged to have been suffered by him as the result of an accident on December 10, 1952, while performing services in the scope of his employment and within the course of his employer’s business of -operating a sawmill. From a judgment in plaintiff’s favor, awarding him compensation at the weekly rate of $22.10 from the date of the accident to and inclusive of December 31, 1953, less compensation previously, paid, together with $1,000 . as medical expenses, less sums also previously paid, plus 12 percent of all sums awarded- as penalties, together with an additional 20 percent of all of such sums as attorneys’ fees, and fixing and taxing as costs the expert witness fees, defendant appealed.
Appellee has answered the appeal, praying that the compensation be increased to $29.44 per week and payable for a period of 400 weeks and that an attorneys’ fee of $750 be allowed, as well as the statutory 12 percent penalties on all of said sums.
On the date and occasion of such accident and for some time prior thereto-, plaintiff was and had been employed by the Carroll W. Maxwell Lumber Company in Grant Parish, Louisiana, where he performed various and sundry duties in the operation of the sawmill. At the particular time of the accident, however, he was engaged in rolling a log down the skidway. The skidway consisted of logs or skids about 10 inches in diameter laid upon a floor, which separated the rolling log from the floor by a space of approximately 10 inches. When the log being rolled reached the stopping point, plaintiff reached for it with his cant hook, which failed to take hold, and the log continued forward against plaintiff, throwing his body forward and pinning his left leg under the log, inflicting the-injuries suffered by him.
Following the accident, plaintiff was carried to his residence and the following day to Dr. T. E. Banks of Alexandria, who, on examination,, observed that.he had a.generalized effusion in the region of the left knee showing definite acute injury, pain on abduction of the knee and tenderness over the medial collateral ligament and over the medial joint line. X-rays showed no fracture but a diagnosis was made of a partial tear of the medial collateral ligament of the left knee, with a probable injury to the medial' meniscus. The Doctor placed' plaintiff in a walking cylinder cast, which he wore until December 31, at which time it wds removed and he was placed on crutches arid instructed as to exercises and partial weight bearing. Plaintiff returned January 7, when it-appeared to the doctor there was very definite evidence of injury to the medial meniscus and surgery was recommended. Surgery was performed January 17, 1953, and a tear of the anterior *429 one-half of the fibers of the medial collateral ligament was found and repaired. Four days later he was discharged from the hospital but continued under office treatment and observation until April, 1953.
'On this appeal the issues involve (1) the fixing of the rate of compensation; (2) the nature, extent and duration of plaintiff’s injuries; (3) the right to an award of $1,000 for medical expenses, less amounts previously paid; (4) the fixing of fees of expert witnesses, and (5) the allowance of penalties and attorneys’ fees. These issues will he discussed in the order set forth.
 Defendant contends that the contract of employment contemplated 8 hours per day and 5 days per week and that the computation of compensation on that basis by the district court was correct. Plaintiff asserts that, inasmuch as he occasionally worked on Saturdays, the basis should be that of a 6-day week so as to take into consideration his over-time earnings. The trial judge was of the opinion that by a preponderance of the evidence it was established that the sawmill was operated on a basis of 8 hours per day for a 5-day week. We find no manifest error in this conclusion, although occasionally the planer was operated on Saturdays requiring the services of only 3 or 4 of the 31 employees, and also that occasionally Saturdays were utilized for cleaning up and preparing for the next week’s operation. For the performance of these services no employee was required to work, and, as stated by the trial judge, it appeared to be the policy of the management that the laborers who had made the 40 hours during the week were not-called for the extra hours on Saturday but only those who had not been able to make the full hours during the week were' given the opportunity to- perform these extra duties, which was voluntary on their part and at their option. The rule for the computation of compensation was restated hy the Supreme Court in Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177, 182, as follows:
“ * * * the weekly compensation award must be based on the employee’s earnings at the time of his injury, and this is determined by taking his then daily rate of pay and multiplying it by the number of days customarily worked per week. Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, Calhoon v. Meridian Lumber Co., Inc., 180 La. 343, 156 So. 412, Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855, and Troquille v. Estate of Lacaze, 222 La. 611, 63 So.2d 139.”
This rule was followed by the Orleans Court of Appeal in Scott v. Fulton Bag & Cotton Mills, La.App., 65 So.2d 397, 402. In that case the court stated;
“We think that the weekly wage was ■correctly based on a five-day week. In Tulane Law Review, Vol. ’XIX, page 308, will be found a lengthy discussion of the' various decisions in which the courts have considered the question of whether compensation should be paid on the basis of a five-day week, or a six-day week, or a seven-day week, and our conclusion is that, since the record here shows that plaintiff was employed regularly on a five-day week basis, although at times she may have worked an extra day or extra hours, her compensation should be based on a five-day week.”
■Compensation is, therefore, based upon plaintiff’s rate of pay of 85 cents per hour, as to which there is no dispute, and on an 8-hour day of 5 days per week. Therefore, the award of $22.10 per week is correct.
A determination of the natqre, extent, and duration of plaintiff’s disability requires a consideration of the testimony not only of .plaintiff and other lay witnesses, but the evidence of six physicians.
The testimony of Dr. T. E. Banks as to the performance of the operation was heretofore referred to. Considering his further testimony, he, as the other experts testified, stated that the operation was a success and' that after a reasonable interval there should be full recovery with no limitation; that the period of recovery usually was from 6 to 12 weeks, and that plaintiff on his *430 last visit to his oiEce on September 4, 1953, had, in his opinion, recovered and was able to return to his same employment, even though a little tenderness was observed over the fat pad of the knee joint, attributable to scarring, and which would not impair function in the class of work performed by plaintiff; in fact, it was recommended, after an examination of March 5, 1953, that plaintiff return to work for the purpose of determining the strength of his knee and whether or not such was sufficient for him to be completely discharged. The doctor did not see plaintiff from April to September.
A final result of the accident and the operation, in the witness’ opinion, was that plaintiff had sustained a 5 percent permanent disability to the knee, based on findings that were not too evident but upon the continual complaint of pain and tenderness which were more of a subjective rather than an objective nature. On his examination of April 7, it was concluded that by May 1 plaintiff should have been able to return to full duty.
Dr. Daniel M. Kingsley, testifying on behalf of plaintiff, from examinations made beginning August 21, 1953, found that the operation was successful and excellent results obtained, and stated that the duration for recovery of ability for heavy work was approximately 3 months. On the first examination and on the second and third examinations of August 24 and September 1, he found no swelling in the knee and only atrophy of the muscle, which could be eliminated by exercise. Dr. Kingsley’s opinion was that plaintiff had an 8 to 10 percent permanent disability to do heavy work due to the permanent impairment of the quadriceps muscle.
Dr. P. M. Davis, who examined plaintiff August 14, 1953, was of the opinion that plaintiff’s operation was the most successful one he had had the opportunity to examine, and that 3 months was an approximate period for recovery. He explained that in most cases, after an operation, a person would experience pain for a period of time on exercise or work until an adjustment takes place. His opinion was that plaintiff was fully able to do heavy work.
Dr. A. Scott Hamilton of Monroe, who examined plaintiff on May 18 and October 26, 1953, although of the opinion that plaintiff had suffered a partial disability of 5 percent, testified he was fully able and capable of returning to work; and that he himself usually allowed from 3 to 4 months, and frequently as much as 6 months, for a recovery after such an operation.
Dr. Milton A. Honigman of Alexandria, a witness on behalf of plaintiff, testified that the normal period of disability was from 6 to 10 weeks and was of the opinion that plaintiff could not do any extensive climbing for any period of time nor that he could stand too much pressure on his leg because of the weakness of the muscles and weakness from the operation, and that he was unable to do heavy work requiring standing for excessive lengths of time or jumping.
Dr. R. Bruce Wallace, Jr., of Alexandria, expressed an opinion March 25, 1953, there would be no permanent disability although he was not fully recovered from the injury at that time, and later expressed himself, after seeing plaintiff again in September, 1953, that it was his opinion at that time plaintiff was unable to perform heavy work.
The testimony of plaintiff and the other lay witnesses is to the effect that plaintiff had not been able to perform hard manual labor since the accident, and while the opinion of the experts, as hereinabove shown, is not entirely in accord, the preponderance of their testimony is that plaintiff, notwithstanding a partial disability to his knee, is capable of returning to his former work or work of the same or similar kind and character.
The evidence discloses that plaintiff engaged in work on several occasions prior to the date of trial, although some were of short duration, and that for several months, particularly during January, February, March, April and May, 1954, as well as in 1953, after the trial on October 28, the *431 plaintiff was engaged in hauling logs .at $1 per hour for the H. B. Foote Lumber Company. The trial judge, no doubt, took into consideration all the facts and circumstances of this case, the testimony of the lay and expert witnesses as to plaintiff’s ability to work and his actual work in the meantime, as well as the doctors’ opinions as to plaintiff’s slight partial disability to his knee, and awarded compensation through December 31, 1953. A review of the record discloses no manifest error in these findings and conclusions.
The judgment making an award for medical expenses is in error and will be disallowed. Whatever medical expenses were incurred have been paid by the defendant. It is not shown that plaintiff has incurred or anticipates incurring any additional expense.
Defendant complains of the court’s fixing of the fees of the expert witnesses and that they were fixed without the formality of a rule. In plaintiff’s petition one of his demands was for the fixing and taxing as costs the fees of the expert witnesses used in his behalf. That was one of the issues presented to the court on the trial of the case. Moreover, the statute requires that the fees be fixed in the judgment awarding compensation, otherwise, such fees shall not be allowed. LSA-R.S. 23:1317; Jefferson v. Lauri N. Truck Lines, 192 La. 29, 187 So. 44; Valentine v. Southern Advance Bag & Paper Co., Inc., La.App., 20 So.2d 814, 815. In the latter case this court stated:
“The fixing of fees of medical experts in compensation cases, and the questions as to how, when and by what Court such fees should be fixed, have been the cause of much uncertainty in the jurisprudence of our State. By its pronouncement in the case of Jefferson v. Lauri N. Truck Lines, 192 La. 29, 187 So. 44, the Supreme Court has established the rule that fees must be fixed in the judgment rendered on the merits, and not in a subsequent judgment on a rule to tax costs.”
Therefore, a separate or subsequent rule for the fixing of such fees is neither proper nor required. The fee of Dr. M. A. Hon-igman who testified in court, was, on motion of plaintiff’s counsel in open court, without protest from defendant, fixed in the sum of $50. A protest timely made would have afforded the trial court an opportunity to reconsider the allowance in the light of the protest. Under the facts, the fee was not, in our opinion, excessive. We have concluded, however, that the fees fixed for the experts who testified under deposition are excessive and should be reduced to $25 each.
Last for consideration is plaintiff’s claim for penalties and attorneys’ fees. Under LSA-R.S. 22:658, such penalties and attorneys’ fees are only allowed where failure to make payments is found to be arbitrary,' capricious of without probable cause. Though the delays in making payments are not to be countenanced, from a review of the record and the medical reports, we are unable to conclude positively that the delay was due to either of those causes.
For the reasons herein assigned, the judgment appealed from is amended by rejecting and disallowing the $1,000 medical expense, less sums previously paid, and by rejecting and disallowing penalties and attorneys’ fees, and by further fixing the expert witness fees of Drs. T. E. Banks, Daniel M. Kingsley and A. Scott Hamilton in the sum of $25 each, and, as thus amended, the judgment appealed is affirmed.
Amended and affirmed.