REGAN, Judge.
• Plaintiff, John Carmouche, employed as a truck driver, instituted this suit against the defendant, his employer, .the Maloney Trucking & Storage,' Inc., endeavoring to recover workmen’s compensation at the rate of $30 per week for a period of four hundred weeks, together with penalties, existing and anticipated medical expenses and attorney’s fees, for -total and permanent disability, resulting from injuries incurred to his back by virtue of an accident which occurred on November 30, 1954, when he and a co-employee were unloading bales of cotton from the defendant’s truck.
defendant answered and admitted the occurrence of the accident and resulting injuries, but insisted that the plaintiff had fully recovered therefrom as of January 17, 1955.
From a judgment awarding plaintiff compensation for total and permanent disability at the rate of $29.90 per week for 400 weeks, $661.18 for medical expenses and $100 for expert fees, defendant has prosecuted this appeal. Plaintiff has answered the appeal requesting that the judgment be amended so as to reserve his right to assert a claim for future medical expenses.
On November 30, 1954, the plaintiff was assisting in unloading[1] bales of cotton from a truck owned by the defendant. Plaintiff and a fellow employee, Albert Harris, were standing, on the ground , alongside of the truck in order to maintain 'the upright po *804 sition of the bales, as they were rolled from the truck to the ground; one of the bales, weighing approximately 542 pounds, was rolled from a very elevated position in the truck and upon striking the ground, it was grabbed by the cotton hooks customarily used in this work by the plaintiff and, Harris; Harris’ hook tore loose causing the bale to strike plaintiff on his left side, knocking him into the side of the truck; however, Harris and plaintiff, upon recovery of his equilibrium, again grabbed the bale, but this time the plaintiff’s hook tore loose therefrom causing him to fall violently to the concrete wharf upon his buttocks. He was stunned and remained sitting in this position for about fifteen minutes when he was persuaded by his co-workers to move and lie down to rest on some bales of cotton. He endeavored to work for several additional hours, but that night suffered chills, fever and severe pains in the back. The following day he was referred to Dr. John Andrews, defendant’s physician, who, after examining him, diagnosed his condition as moderate contusions of the entire back. On December 15, 1954, Dr. Andrews had X-rays taken which were negative except for some minor degenerative arthritic changes. On January 4, 1955, he again examined plaintiff and could find no objective signs to account for plaintiff’s complaints, so he referred him to Dr. Howard Karr, a neurosurgeon, Dr. Hyman Soboloff, an orthopedist, and Dr. Meyer Teitelbaum, a radiologist. Upon receipt of negative reports on January 14, 1955, from these doctors, he discharged the plaintiff and instructed him to return to work as of Monday, January 17, 1955.
On that day, plaintiff visited the offices of Dr. Blaise Salatich, who, after examining him and X-rays which had been taken of his back, diagnosed his condition as. a “crushing torsion-type low back injury involving ligamentus and musculo-fascial structures lumbo sacral region, subsiding, associated with residual dysfunction and low back pain.” He prescribed diathermy treatment, anti-spasm drugs and a lumbo-sacral corset. Plaintiff returned to his office for these treatments 120 times which extended over a period of approximately eight and one-half months and was still undergoing treatment and wearing the corset at the time of the trial.
On January 24, 1955, plaintiff visited the office of Dr. Frederick Rhodes, a general practitioner, who, after examining the plaintiff, was of the opinion that he had “limited flexion of the back and on pressure * * * I detected that there was pain or, at least, he complained of pain along the * * * lumbar spine and sacral spine * * * and muscle spasms.” He prescribed codeine for pain and external analgesics to be applied to the back. Plaintiff did not visit the offices of Dr. Rhodes again.
In addition to the foregoing expert testimony there appears in the record the lay testimony of plaintiff’s wife, his mother, Rosetta Carmouche, Rev. S. A. Jones, the pastor of his church, A. J. Kelly and Ernest Northless, truck drivers, who, in substance, testified that they had occasion to observe plaintiff on many occasions and that they saw his inability to rise from a prone position, to turn the wheels of a truck, to hold a small baby or lift any heavy object, to dress and undress himself and that he manifested many other external symptoms of one who is suffering from a painful back.
The testimony of Northless was particularly impressive because the incident which he spoke of occurred at a time which was unsuspicious. He related that in the month of June, 1955, he was sitting in his truck parked in the cotton warehouse, when he noticed a congestion of traffic created by another truck which blocked the entrance to the wharf; he alighted from his truck to ascertain the cause thereof and discovered that the plaintiff[2] perspiring excessively, was laboriously endeavoring to turn the steering wheel of the truck, but was unable to maneuver it because of pain in his back and that he finally entered the truck and *805 backed it into the warehouse for-the plaintiff.
Plaintiff contends that he is' totally and permanently disabled and, therefore, unable to resume his former occupation as the operator of a trailer truck.
Defendant, on the other hand,- insists that the plaintiff was fully capable of returning to his former employment as of January 17, 1955, and, in effect, he is a malingerer.
The only question posed for our consideration is one of fact and that is whether the plaintiff is able to resume his former employment. The trial judge answered this question in the negative and our examination of the record, together with his written reasons for judgment, fails to disclose reversible error in his legal or factual conclusions. In his written reasons for judgment, the trial judge said:
“In such a case as this where two orthopedist specialists apparently reach opposite conclusions the Court is entitled to view the case as a whole giving weight to the lay testimony as well as to the medical, specialist and non-specialist.
“Viewing the case as a whole the Court does not believe plaintiff is a malingerer, but is of the opinion that plaintiff is not able to work without "ensuing disabling pain, and is therefore entitled to be considered as totally and permanently disabled within the meaning of the Compensation law.”
After a comprehensive analysis of all of the facts including the conflicting medical testimony and that of the lay witnesses, we believe that the plaintiff has sustained the burden of proof and has established with that certainty which the law requires his-claim of total and permanent disability to perform the arduous duties of the operator of a heavy trailer truck.
We are fully cognizant of the caution which we must exercise in a case of this-nature in view of the conflicting medical testimony; however, if plaintiff’s condition should improve, the defendant may avail itself of the provisions of the Workmen’s Compensation Law, LSA-R.S. 23:1021 et seq., which affords it the right to reopen the case after the lapse of six months.
It is our opinion that plaintiff’s right to assert a claim in the future for whatever additional amount he may incur for treatment of his injuries should be reserved to him. Boykin v. We Hope Gas & Oil Co., La.App., 2 So.2d 528; Rosenquist v. New Amsterdam Casualty Co., La. App., 78 So.2d 225; Wilson v. New Amsterdam Casualty Co., La.App., 86 So.2d 556; Fourchea v. Maloney Trucking and Storage, Inc., La.App., 88 So.2d 82.
For the reasons assigned the judgment appealed from is amended by reserving to the plaintiff his right to assert a claim for any medical expenses he may incur in the future in connection with his injuries and, as thus amended, it is affirmed.
Amended and affirmed.

. Plaintiff’s occupation, in addition to the operation of a trailer truck, required Mm to both, load and unload - the contents thereof.

. Plaintiff, on this occasion, was attempting to resume liis occupation as a truck driver with another company.